**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

W.R. HUFF ASSET MANAGEMENT CO., L.L.C.;
KATO-SAN CORP.;
DBC 1 CORP.,

                *Plaintiffs*,

    v.

               Civ. Action No. 04-3093
                     (KSH)

THE WILLIAM SOROKA 1989 TRUST;
KAYE WOLTMAN, *successor trustee to the William Soroka 1989 Trust and Executor of the Estate of William Soroka*;
THE WILLIAM SOROKA CHARITABLE TRUST,

                *Defendants*.

                     **OPINION**

**Katharine S. Hayden, U.S.D.J.**

**I.    INTRODUCTION**[1]

On March 9, 2009, the Court issued an opinion and accompanying order [D.E. # 116, 117] in this contract dispute, holding that judgment should be rendered for defendants in the amount of $6,564,698.00. This figure represents: (1) quarterly distributions payable to defendants in 2003 and 2004 based on William Soroka's interest in the Huff investment venture; and (2) the final capital account balance to which defendants were entitled as of December 31, 2004. The Court's order directed the parties to submit a stipulated form of judgment reflecting

---

[1] References to the parties are identical to those in the Court's March 9, 2009 opinion. A complete factual description can be found there as well.

its opinion, and the Court entered judgment as stipulated on March 24, 2009 [D.E. # 120].[2] Having reserved the right to do so in the stipulation [D.E. # 118], defendants filed this motion under Rule 59(e) of the Federal Rules of Civil Procedure, seeking to amend the judgment to include prejudgment interest [D.E. # 121].[3]  Huff opposes the motion.

## II.    DISCUSSION

A federal district court sitting in diversity applies the forum state's law with respect to prejudgment interest.  *Salas by Salas v. Wang*, 846 F.2d 897, 909 n.13 (3d Cir. 1988) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)); *Jarvis v. Johnson*, 668 F.2d 740, 746 (3d Cir. 1982). In New Jersey, whether and to what extent prejudgment interest is awarded on a contract judgment rests in the discretion of the trial court.   *Cty. of Essex v. First Union Nat'l Bank*, 186 N.J. 46 (2006).  In exercising its discretion, the Court may use New Jersey court rules regarding pre- and postjudgment interest in tort cases as a benchmark (*see infra*), but ultimately must square its decision with the equities of the particular case before it.  *See Gleason v. Norwest Mortg., Inc.*, 253 F. App'x 198, 204 (3d Cir. 2007) (citing *Cty. of Essex*, 186 N.J. at 61-62).

The governing premise of prejudgment interest in contract cases is that the unsuccessful party has had the use of the funds in question, and the prevailing party has not; "the interest factor simply covers the value of the sum awarded for the prejudgment period during which the [unsuccessful party] had the benefit of monies to which the [prevailing party] is found to have been earlier entitled."  *Rova Farms Resort, Inc. v. Investors Ins. Co.*, 65 N.J. 474, 506 (1974);

---

[2] The Court signed the judgment on March 23, 2009, and it was docketed the following day [D.E. # 120].

[3] Motions to amend a judgment to include prejudgment interest are properly asserted under Rule 59(e).  *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989).

*see also Unihealth v. U.S. Healthcare, Inc.*, 14 F. Supp. 2d 623, 642 (D.N.J. 1998) ("The purpose of awarding prejudgment interest is to compensate the claimant for the loss of income the money owed would have earned if payment had not been delayed."). Prejudgment interest should neither be imposed as a punitive measure, *New Jersey Mfrs. Ins. Co. v. Nat'l Cas. Co.*, 393 N.J. Super. 340, 354 (App. Div. 2007), nor should it be withheld due to the unsuccessful party's "honest disputation over legal liability," *Rova Farms*, 65 N.J. at 506; *see also* Sylvia B. Pressler, *Rules Governing The Courts of the State of New Jersey*, R. 4:42-11, cmt. 8 ("Prejudgment interest is not a penalty but rather its allowance simply recognizes that until the judgment is entered and paid, the [unsuccessful party] has had the use of money rightfully the [prevailing party's].").

Here, defendants seek prejudgment interest, running from the date on which the partnership agreement terminated—December 31, 2004. Def. Br. at 7. They further request that the Prime Lending Rate ("prime rate") be applied, and compounded on an annual basis. *Id.* at 7-8. Opposing the motion, Huff makes three principal arguments. First, it claims that defendants waived the right to seek prejudgment interest. Pl. Opp. Br. at 4-6. Second, it argues that in any event, equity precludes an award of prejudgment interest here. *Id.* at 7-12. Third, it argues alternatively that should the Court conclude that prejudgment is appropriate here, a number of considerations require a substantially lower interest figure than that which defendants request. *Id.* at 12-16. The Court addresses each argument in turn.

### A.  Defendants Did Not Waive the Right to Seek Prejudgment Interest

Huff argues that defendants waived the right to seek prejudgment interest because they failed to request prejudgment interest in their counterclaim [D.E. # 2] or in the pretrial order

[D.E. # 51], and because § 5.6 of the Operating Agreement expressly excludes an award of prejudgment interest. Pl. Opp. Br. at 4-5. Neither claim has merit.

        1.   <u>Counterclaim/Final Pretrial Order</u>

Defendants did not include a specific claim for prejudgment interest until the Court ruled in their favor, but as the Seventh Circuit has stated, "this is not dispositive." *Williamson v. Handy Button Mach. Co.*, 817 F.2d 1290, 1298 (7th Cir. 1987). Huff cites several cases standing for the general proposition that legal issues not presented before judgment is entered may be deemed waived. *See, e.g.*, *Kiewit E. Co. v. L&R Constr. Co.*, 44 F.3d 1194, 1204 (3d Cir. 1995); *Falkenberg Capital Corp. v. Dakota Cellular, Inc.*, 925 F. Supp. 241, 243 (D. Del. 1996); *St. Mary's Area Water Auth. v. St. Paul Fire & Marine Ins. Co.*, No. 04-1593, 2007 WL 1412240, at *6 (E.D. Pa. May 11, 2007); *Steele v. Young*, 11 F.3d 1518, 1520 n.1 (10th Cir. 1993). But Rule 54(c) of the Federal Rules requires that all judgments, save for those rendered in default, "grant the relief to which a party in whose favor it is rendered is entitled, *even if the party has not demanded such relief in his pleadings*." Fed. R. Civ. P. 54(c) (emphasis added); *see also Williamson*, 817 F.2d at 1298 (despite failure to raise prejudgment interest in pleadings, "Rule 54(c) was designed to divorce the decision what relief to award from the pleadings and arguments of counsel; the court is to determine, and award, the right relief in each case even if the complaint is silent on the question."); *Carter v. Diamondback Golf Club, Inc.,* 222 F. App'x 929, 931 (11th Cir. 2007) (unpublished) ("Rule 54 requires the district court to grant the relief to which each plaintiff is entitled, even if that relief is not requested in the complaint.").

The Court is satisfied that a party's failure to assert a demand for prejudgment interest in a pleading is ultimately trumped by Rule 54(c) if such an award would provide the relief to

which a party is otherwise entitled. Accordingly, defendants' threshold omission of a demand for prejudgment interest in their counterclaim does not now hinder such an award.

Nor does the absence of a specific claim in the pretrial order bar defendants from obtaining prejudgment interest. At least two courts of appeals have rejected such an argument on Rule 54(c) grounds. *See Rocket Jewelry Box, Inc. v. Quality Int'l Packaging, Ltd*., 90 F. App'x 543, 547 (Fed. Cir. Feb. 12, 2004) (failure to request prejudgment interest in pretrial order did not constitute a waiver of the claim) (unpublished); *Dalal v. Alliant Techsystems, Inc*., No. 94-1483, 1995 U.S. App. LEXIS 35559, at *17-18 (10th Cir. Dec. 18, 1995) ("We agree . . . that under Fed. R. Civ. P. 54(c), [plaintiff's] failure to request prejudgment interest [in the complaint and in the pretrial order] did not preclude the district court from making the award.") (unpublished); *accord Cooper v. Ambassador Pers., Inc.*, 570 F. Supp. 2d 1355, 1359 (M.D. Ala. 2008) (Pursuant to Rule 54(c), "the absence of any request for injunctive or declaratory relief in the pretrial order in this case does not mean that [plaintiff] waived or withdrew any entitlement to such after trial.").

The Third Circuit has not squarely addressed the prejudgment interest question raised here, but has held that the "decision of whether or not to permit a change [in a pretrial order] is within the discretion of the trial judge." *Ely v. Reading Co.*, 424 F.2d 758, 763 (3d Cir. 1970). In *Springer v. Henry*, 435 F.3d 268 (3d Cir. 2006), the Third Circuit upheld the district court's decision to permit testimony related to a falsity defense in a First Amendment case despite the defendant's failure to raise the issue in the pretrial order. *Springer*, 435 F.3d at 276 n.4. The court distinguished *Ely*, which had upheld the district court's refusal to permit an expert's testimony because the expert had not been listed in the pretrial order. *Id.* In so doing, the court

explained that while the "pretrial order is generally binding on the parties . . . our decision in *Ely* did not hold that an argument automatically is waived if not extant in the pretrial order." *Id.*

The authority above is persuasive.  Under Rule 54(c), the omission in the pretrial order is not fatal to defendants' claim for prejudgment interest. The Court thus finds that defendants did not waive the right to seek prejudgment interest as a result of their failure to raise the issue until this time.[4]

### 2. Operating Agreement

Section 5.6 of the Operating Agreement provides as follows:

> No Member, General Manager or any of their respective Affiliates (collectively the "Indemnified Parties") shall be liable to any other Member or the Company for mistakes of judgment or for any action or inaction, unless such mistakes, action or inaction arise out of, or are attributable to, the gross negligence, willful misconduct or bad faith of the Indemnified Party; nor shall any Indemnified Party be liable to any other Member or the Company for any action or inaction of any broker, or other agent of the Company or the

---

[4] In support of its argument that defendants waived prejudgment interest because they did not raise it in the pretrial order, Huff cites case law outside of the Third Circuit. *See* Pl. Opp. Br. at 5 (citing *Christ v. Beneficial Corp.*, No. 98-210, 2008 WL 2385028, at *4-5 (M.D. Fla. Aug. 17, 2008); *Innovations, Designs & Interiors, Inc. v. S. Guar. Ins. Co.*, No. 99-185, 2002 WL 1611498, at *1 (N.D. Miss. June 13, 2002); *Lindy v. Shakertown Corp.*, 209 F.3d 802, 804 (5th Cir. 2000); *Garcia v. Burlington N. R.R.*, 818 F.2d 713, 721 (10th Cir. 1987)).  Having reviewed these non-binding decisions, the Court finds them either distinguishable or unpersuasive, and will not follow them.  The Third Circuit authority that Huff does cite, *Hughes v. Consol-Pennsylvania Coal Co.*, 945 F.32d 594, 616 (3d Cir. 1991), is distinguishable.  In *Hughes* the Third Circuit upheld the district court's denial of prejudgment interest as untimely under Pennsylvania law.  *Hughes*, 945 F.2d at 616.  In doing so, it merely agreed with the district court that the untimeliness "constitute[d] a countervailing equitable consideration militating against [prejudgment interest]," and affirmed the lower court's decision.  *Id.*  As it later clarified in *Springer*, the Third Circuit did not purport in *Hughes* to *preclude* district courts from entertaining issues not raised in the pretrial order under the appropriate circumstances.  *Springer*, 435 F.3d at 276 n.4.  Given its discussion of Rule 54(c) above, the Court finds good reason not to follow the path taken by the district court in *Hughes*.

> General Managers, provided that such employee, broker, or other
> agent was selected, engaged or retained by such Indemnified Party
> with reasonable care.  An Indemnified Party may consult with
> counsel, accountants, investment bankers, financial advisors,
> appraisers and other specialized, reputable, professional
> consultants or advisers in respect of Company affairs and be fully
> protected and justified in any action or inaction which is taken in
> accordance with the advice or opinion of such persons, provided
> that they shall have been selected with reasonable care.
>
> Notwithstanding any of the foregoing to the contrary, the
> provisions of this Section 5.6 shall not be construed so as to relieve
> (or attempt to relieve) the Indemnified Parties of any liability to the
> extent (but only to the extent) that such liability may not be
> waived, modified or limited under applicable law, but shall be
> construed so as to effectuate the provisions of this Section 5.6 to
> the fullest extent permitted by law.

Ex. P-1, § 5.6.  Despite the absence of the words "prejudgment interest" in § 5.6, Huff argues

that under the "express terms" of the general liability exculpatory clause, prejudgment interest

should be disallowed because any such award "amounts to holding [it] and the other members

liable for [Huff's] action or inaction – i.e., the non-payment of profit distributions and the ending

capital account to [d]efendants."  Pl. Opp. Br. at 5-6.  The Court finds to the contrary, and agrees

with defendants that § 5.6 does not concern prejudgment interest; rather, it is a protective clause

concerning investment conduct undertaken by William Huff, as indicated by  the references to

"counsel, accountants, investment bankers, financial advisors, appraisers and other specialized,

reputable, professional consultants or advisers."

Additionally, Huff's waiver theory is inconsistent with the Court's judgment that Huff is

liable to defendants; in a footnote to its argument, plaintiff argues that

> [d]efendants may argue in reply that [Huff's] interpretation of
> Section 5.6 would, taken to its logical extreme, mean that [Huff]
> could avoid paying [d]efendants profit distributions and the
> balance of Soroka's capital account.  To the extent [d]efendants so
> argue, they are wrong.  Even though the judgment in this matter

> ultimately calls for the payment of money to [d]efendants, this
> Court held that [d]efendants were entitled to said payment pursuant
> to the equitable remedy of specific performance.

Pl. Opp. Br. at 6-7 n.5.  While the Court did award judgment under the equitable doctrine of specific performance, the exculpatory provision upon which Huff relies protects against *liability*, to the extent relevant; it does not exculpate for that which a party was obligated to pay under the Operating Agreement in the first instance.  Nor is the provision's application contingent on the mode in which such an original obligation was determined by this Court.  In any event, prejudgment interest in contract cases, as the Court has noted, is just as much a doctrine of equity as is specific performance.  Accordingly, plaintiff's argument does not follow; there is no good reason why Huff would go unprotected under § 5.6 as to the withheld funds (absent gross negligence, willful misconduct, or bad faith), but would suddenly be shielded from prejudgment interest (absent gross negligence, willful misconduct or bad faith) under the same provision, simply because the underlying judgment was rendered in equity, on the basis of specific performance.  Defendants did not waive the right to seek prejudgment interest under the Operating Agreement.

### B.  Prejudgment Interest is Appropriate in this Case

Huff gives five reasons why the Court should withhold prejudgment interest:  (1) the Court did not find in its March 9, 2009 decision that Huff breached the Operating Agreement; (2) the Huff members have not had the benefit of the funds at issue because they were held in reserve, and were not invested at the prime rate; (3) defendants delayed this litigation by proffering a different version of the Operating Agreement (the "Soroka version") that the Court ultimately excluded from evidence, and that in any event Huff did not cause the protracted length of the case; (4) because Huff set aside a reserve fund, the other Huff members have not had the

benefit of part of their shares; and (5) the current financial turmoil would presumably have negatively impacted defendants, and thus the rate of return which they seek is unreasonable. The Court addresses each of these reasons in turn, and concludes that an award of prejudgment interest is appropriate here.

First, the Court's rationale for why Huff owes defendants money is inapposite. Huff asserts that the Court specifically found that Huff did not breach the Operating Agreement, implying that the Court did find Soroka's invalid attempt to transfer his interest to be a material breach of contract, or that defendants' conduct was otherwise nefarious. Pl. Opp. Br. at 7-8. But the Court did not so find. The Court's judgment was rendered in equity, and despite defendants' "violation" or "breach" of a single provision of the Operating Agreement, the Court found that other contractual provisions provided the remedy. Specifically, the Court found that the Operating Agreement required Huff to make continuing payments to defendants. Huff's argument that prejudgment interest would "reward [d]efendants for breaching the Operating Agreement and result in an unjust windfall," *id.* at 8: (1) takes the Court's opinion out of context; and (2) is a mere recapitulation of one of its trial arguments—that the attempted transfer was an equitable consideration militating against a judgment for defendants. The Court considered the argument, but ultimately found for defendants. There is no reason to find differently when the issue is prejudgment interest.

Second, Huff argues that in reality, the Huff members have not had the benefit of the funds set aside in reserve, and that those funds were invested at a rate lower than the prime rate. *Id.* at 8; *see also* Decl. of Bryan Bloom ("Bloom Decl.") ¶ 6. Huff also argues that defendants would have had to pay taxes on the amounts as they were paid back then, and thus would not have had the benefit of the entire $6.5 million that was awarded. *Id.* at 8-9. But whether or not

9

the individual members had the benefit of the funds while this case was pending is not a reason to forego prejudgment interest; the point is that *defendants did not* have benefit of the funds when they should have. *See Unihealth*, 14 F. Supp. 2d at 642. Additionally, that the reserve funds earned a lesser rate than that which defendants now seek, and that the tax consequences that defendants would have faced had they received proper payment would have resulted in a lesser amount to invest, are reasons to decrease either the applicable interest rate or the amount of the judgment upon which the rate is applied. They are not reasons to deny prejudgment interest outright.

Third, the Court rejects Huff's argument that defendants should not receive prejudgment interest because they delayed the case by proffering the Soroka version of the Operating Agreement, and deposed other Huff members in doing so. *Id.* at 9-11. The delay caused by the authenticity issue was not so great that precluding prejudgment *in toto* is appropriate. While some courts have suspended prejudgment interest during delays not attributable to either party under New Jersey's "exceptional cases" doctrine, (*see infra*), the progression of this case from the filing of the complaint through the Court's trial opinion was not so delayed that prohibiting prejudgment interest at all is a just result. Rather, the post-trial delay in this case is a consideration to be taken up below with respect to the parameters of the prejudgment interest award.

Fourth, Huff argues that because its members set aside funds in reserve to pay for the judgment that ultimately came to fruition, the members themselves did not receive interest on their ending capital accounts, and an award of prejudgment interest will cause an unfair and attendant decrease in those members' ending capital accounts. *Id.* at 11. It adds that "it would be unfair to punish these members, who did not breach the Operating Agreement, and reward

10

[d]efendants, who did." *Id.* The Court finds this argument to be an extension of the first and second claims above, and it is rejected accordingly. The other members' use of the withheld funds is not the focus; defendants' inability to use the funds drives the analysis here.

Finally, Huff argues that "in light of the performance of the financial markets during the time period in question, prejudgment interest—particularly the more than 30% return [d]efendants seek—would not constitute "fair compensation . . . ." *Id.* (citing *Dall'Ava v. H.W. Porter Co.*, 199 N.J. Super. 127, 130 (App. Div. 1985)). In essence, it asks the Court to predict what defendants would have done with the funds, and conclude that given the recent financial turmoil, the money would now be worth less today. *See id.* at 11-12. The Court disagrees that this conclusion "is no great leap." *Id.* at 12. To the extent that the current condition of the economy should decrease the amount of prejudgment interest to which defendants are entitled is one thing; to preclude prejudgment interest altogether by finding that defendants necessarily would be worse off today is another.

When all is said and done, defendants were not paid the distributions required under the Operating Agreement, money from which they should have been able to benefit. This fact is determinative, and the Court holds that the circumstances of this case entitle defendants to prejudgment interest.

### C.  Parameters of Prejudgment Interest

With respect to how much prejudgment interest is appropriate, four issues are in dispute: (1) the rate of interest that should apply; (2) what portion of the judgment the interest rate will apply to; (3) the period during which prejudgment interest should apply; and (4) whether simple or compound interest should apply.

1.   Interest Rate

Defendants seek prejudgment interest at the prime rate, relying on this Court's opinion in *Gleason v. Norwest Mortgage, Inc.*, No. 96-4242, 2008 U.S. Dist. LEXIS 58381 (D.N.J. July 30, 2008).   In *Gleason*, the Court—at the Third Circuit's tacit suggestion—awarded on remand prejudgment interest at the prime rate.   *Gleason*, 2008 U.S. Dist. LEXIS at *8-13 (discussing *Gleason v. Norwest Mortg., Inc.*, 253 F. App'x 198, 205 (3d Cir. 2007)).   But *Gleason* is not this case, and as Huff points out, defendants make no attempt to analogize the equities of that case to those now before the Court.  Pl. Opp. Br. at 13.

The New Jersey Appellate Division has found that in contract cases, New Jersey Court Rule 4:42-11(a)(ii)—requiring application of the New Jersey Cash Management Fund Rate for pre- and postjudgment interest in tort actions—provides an appropriate "starting point," absent unusual circumstances.  *DialAmerica Marketing, Inc. v. KeySpan Energy Corp.*, 374 N.J. Super. 502, 511 (App. Div. 2005); *Benevenga v. Digregorio*, 325 N.J. Super. 27, 25 (App. Div. 1999) ("[L]acking unusual circumstances, we conclude that the rate of return earned by the State Treasurer contemplated by *R.* 4:42-11(a)(ii) is the standard to which trial judges should adhere" in setting a contractual prejudgment interest award.); *see also De Puy, Inc. v. Biomedical Eng'g Trust*, 216 F. Supp. 2d 358, 381 n.22 (D.N.J. 2001) ("New Jersey Court Rule[] 4:42-11(a)(ii) generally provides an appropriate benchmark" for calculating prejudgment interest.), *aff'd sub nom. Pappas v. De Puy Orthopaedics*, 33 F. App'x 35 (3d Cir. 2002); *Devine v. Advanced Comp. Concepts, Inc.*, No. 08-875, 2009 U.S. Dist. LEXIS 1631, at *8 (D.N.J. Jan. 9, 2009) ("Since there are no unusual circumstances present in the instance case, the Court will award prejudgment interest at the rate set forth in N.J. Court Rule 4:42-11([a])."). Finding no remarkable circumstances here, the Court concludes that this rate is an appropriate starting point.

12

The Court finds as well that a downward deviation from the New Jersey Cash Management Fund rate would go too far. While Huff asserts that the reserve funds earned interest of approximately 3.049% per year, Bloom Decl. ¶ 6, there is no indication that had defendants had the benefit of the money, they would have been unable to earn a higher rate. In any event, the New Jersey Cash Management Fund rate has fluctuated between 1% and 5.5% over the applicable time period, which on average is not a significant departure from what Huff asserts the reserve funds earned. The Court has considered all of the circumstances bearing upon a fair rate, including (but not limited to): the amount of judgment at issue; the length of this litigation; the reasonable rates of return that defendants might have earned; the rate of return the reserve funds actually earned; and the financial tumult that the nation has recently endured. On balance, the Court finds that New Jersey Court Rule 4:42-11(a)(ii) provides an appropriate compromise between what defendants might possibly have earned and a "rock-bottom level" that would not provide fair compensation, *Gleason*, 2008 U.S. Dist. LEXIS 58381, at *12, while simultaneously preventing undue punishment against Huff.

### 2. Applicable Amount of Judgment

Huff argues that prejudgment interest should run only on the after-tax portion of the judgment because defendants would have been responsible for paying taxes on the money as they received it. Pl. Opp. Br. at 16-17. But estimating the tax effects that the Soroka estate would have faced had it properly received payment is a guessing game in which the Court will not indulge. Huff itself asserts that "it is *likely* that the money the Court held [d]efendants are entitled to would be subject to the highest applicable tax rates," which it says would equate to a 35% federal rate, and a 6.37% and 8.97% New Jersey rate for the years 2003 and 2004, respectively. Pl. Opp. Br. at 9 n.7 (emphasis added). By its own account, Huff cannot say with

certainty what the applicable tax rates would have been.  The Court will not attempt to recalculate defendants' tax returns with the Huff payments included, a venture that would be fraught with unnecessary complexity and would invite error.  Instead, the Court will apply prejudgment interest to the judgment amount on a pre-tax basis.  *See Parson v. Kaiser Aluminum & Chemical Corp.*, 727 F.2d 473, 478 n.5 (5th Cir. 1984) (finding no error in district court's refusal to allow prejudgment interest only on after-tax amount); *Polaroid Corp. v. Eastman Kodak Co.*, No. 76-1634, 1990 U.S. Dist. LEXIS 17968, at *244-46 (D. Mass. Oct. 12, 1990) (to avoid "unbounded speculation" and unnecessary complication, declining to use after-tax base upon which prejudgment interest would run); *Floe Int'l, Inc. v. Newmans' Mfg., Inc.*, No. 04-5120, 2006 U.S. Dist. LEXIS 59872, at *23-24 (D. Minn. Aug. 23, 2006) (declining to calculate prejudgment interest on an after-tax basis and concluding that case law "does not stand for the general proposition that prejudgment interest should be calculated on an after-tax basis"); *accord Hughes Aircraft Co. v. United States*, 86 F.3d 1566, 1574-75 (Fed. Cir. 1996) (affirming trial court's refusal to award delay damages on after-tax basis because such a calculation would be speculative), *vacated on other grounds*, *United States v. Hughes Aircraft Co.*, 520 U.S. 1183 (1997).

### 3.  Timespan

Huff argues that because its final tax returns were not filed until late 2005, the other members did not receive their ending capital account balances (minus those portions set aside in reserve) until September 8, 2005.  Pl. Opp. Br. at 16 (citing Bloom Decl. ¶ 3).  Thus, Huff argues that prejudgment interest should not begin to accrue as to the funds representing Soroka's ending capital account until that time.  The Court agrees.  As stated earlier, the point of prejudgment interest is to place the prevailing party in the same or similar position in which it would have

14

found itself had it had the benefit of funds to which it was entitled.  The evidence shows that defendants would have had the benefit of the funds when all of the other members received their ending capital account balances.  Consequently, prejudgment interest as to that portion of the judgment reflecting Soroka's ending capital account balance shall begin to accrue on September 8, 2005, the date the other members received their capital account balances.

Huff also argues that prejudgment interest should be tolled during periods in which this litigation was delayed.  Pl. Opp. Br. at 10-11, 16.  To the extent Huff's argument is based on defendants' conduct vis-à-vis the Soroka version of the Operating Agreement, the Court has already rejected it.  While a closer call, to the extent Huff's argument is attributed to judicial delay in rendering a decision, the Court rejects it as well.  New Jersey Court Rule 4:42-11(b) provides that a court may suspend prejudgment interest in a tort action for a period of time in "exceptional cases."  *See Elec. Mobility Corp. v. Bourns Sensors/Controls, Inc.*, 87 F. Supp. 2d 394, 402 & n.3 (D.N.J. 2000); N.J. Ct. R. 4:42-11(b)(1999).  The New Jersey Supreme Court has extended this principle to prejudgment interest in contract cases as well.  *See North Bergen Rex Transport, Inc. v. Trailer Leasing Co., A Division of Keller Sys., Inc.*, 158 N.J. 561, 575 (1999).  Whether in tort or contract, however, the exceptional cases doctrine "should be used sparingly."  *Id.*  "Exceptional circumstances exist 'only where it is demonstrated that the policy, spirit and intent of the rule are patently inapposite to the circumstances at hand.'"  *Salas*, 846 F.2d at 909-10 (quoting *Ruff v. Weintraub*, 105 N.J. 233, 244-46 (1987)).  The party against whom prejudgment interest will accrue need not be at fault for the doctrine to apply; courts have in some instances suspended prejudgment interest during periods of judicial delay not attributable to either party.  *See Elec. Mobility Corp.*, 87 F. Supp. 2d at 403 (citing *North Bergen Rex*

*Transport, Inc.*, 158 N.J. at 575; *Dall'Ava v. H.W. Porter Co.*, 199 N.J. Super. 127, 131, (App. Div. 1985)).

The "delay" in this case is not so extraordinary that prejudgment interest should be denied while the Court's disposition was pending.  In *North Bergen Rex Transport*, contractual language between a lessee and lessor called for an 18% prejudgment interest rate.  158 N.J. at 575.  After trial, the court ultimately granted judgment for the lessor, thirteen months after the trial had concluded.  *Id.* at 567-68.  Because such a delay was contrary to "the administrative practice requiring reserved decisions to be completed within sixty days," the New Jersey Supreme Court invoked the exceptional cases doctrine to suspend the running of the contractual prejudgment interest rate.  *Id.* at 575.  While the articulated exceptional circumstance was the "thirteen-month judicial delay that was not caused by the parties or their attorneys," the decision addressed the New Jersey Supreme Court's concern about an unusually high contractual prejudgment interest rate.  Rather than preclude prejudgment interest outright due to the delay, the Court defaulted to equity, holding that the lessor was still "entitled to interest in accordance with equitable principles."  *Id.*

Other circumstances warranting suspension of prejudgment interest are not present here.[5] The issues before the Court were relatively complex and fact-intensive.  *See Adamson v.*

---

[5] Other cases in which courts have suspended prejudgment not attributable to the fault of either party presented unique circumstances not before the Court, and do not afford a persuasive basis for suspending prejudgment interest.  *See Dall'Ava*, 199 N.J. Super. at 131 (suspending prejudgment interest due to a court-ordered stay pending a co-defendant's bankruptcy proceeding); *Mandile v. Clark Material Handling Co.*, 303 F. Supp. 2d 531, 537-38 (D.N.J. 2004) (same); *Heim v. Wolpaw*, 271 N.J. Super. 538, 542-43 (App. Div. 1994) (suspending prejudgment interest where defendant was "judgment proof"); *Hayes v. Cha*, 338 F. Supp. 2d 470, 515 (D.N.J. 2004) (in medical malpractice action, suspending prejudgment interest during pre-discovery delay when plaintiff was prevented from participating in trial preparation due to

*Chiovaro*, 308 N.J. Super. 70, 82 (App. Div. 1998) (refusing to suspend prejudgment interest where the delay between the return of a jury verdict and the entry of final judgment was due to case-specific complexities).  Critically, the funds at issue were sequestered throughout in reserve, earning interest.  Bloom Decl. ¶ 6.  The exceptional cases doctrine is used to avoid punitive prejudgment interest awards.  Suspending prejudgment interest here would penalize defendants as opposed to sparing Huff from an unduly oppressive judgment.

4.  <u>Compound versus Simple Interest</u>

The Court agrees with Huff that simple interest is appropriate here.  While the "propriety of compounded prejudgment interest is left to the 'informed discretion of the district courts,'" *Phibro Animal Health U.S., Inc. v. Cornerstone AG Prods.*, No. 03-2664, 2006 U.S. Dist. LEXIS 91020, at *5 (D.N.J. Dec. 18, 2006) (quoting *Datascope Corp. v. SMEC, Inc.*, No. 81-3948, 1988 U.S. Dist. LEXIS 9245, at *4-5 (D.N.J. Aug. 15, 1988)), New Jersey courts have found that compound interest "'unduly hastens the accumulation of debt' and regard it as unfairly 'harsh and oppressive.'" *Id.* (quoting *Henderson v. Camden Cty. Mun. Util. Auth.*, 176 N.J. 554, 559-560 (N.J. 2003) (in turn quoting *Abramowitz v. Washington Cemetery Ass'n*, 139 N.J. Eq. 293, 296 (Ch. 1947))).  *A fortiori* here, where the underlying sum upon which the interest rate will be applied is substantial, and the timespan for which the interest will have accrued is not

---

medical exigency); *Leonen v. Johns-Manville Corp.*, No. 82-2684,1988 U.S. Dist. LEXIS 10523, at *4 (D.N.J. Sept. 12, 1988) (suspending prejudgment interest in asbestos case during 8-month period during which all asbestos cases in the District of New Jersey were stayed by the Third Circuit).

17

insignificant, the Court finds that compounded interest would be excessive and punitive given its rulings above.  The most equitable interest rate is simple interest.[6]

5.  <u>Final Prejudgment Interest Parameters</u>

The Court holds that an award of prejudgment interest using the applicable judgment rates defined by the New Jersey Cash Management Fund is appropriate.[7]  In calculating the interest award, the parties shall apply the particular New Jersey Cash Management Fund rate then in existence at the relevant time period.  Simple interest shall apply to the judgment, on a pre-tax basis, as follows:  (1) from January 1, 2005 until March 24, 2009 (the date judgment was entered) on the amount representing the withheld quarterly distribution payments; and (2) from September 8, 2005 until March 24, 2009 on the balance of Soroka's ending capital account.[8]

---

[6] The Court recognizes that this conclusion departs from its previous ruling in *Gleason*.  *See Gleason*, 2008 U.S. Dist. LEXIS 58381, at *10-13 (endeavoring to avoid punishing the prevailing party by awarding "interest at a rock-bottom level").  As defendants recognize, however, that case involved an "unusual fact pattern."  Def. Br. at 8.  The Court concludes that judgment in this case—over 6½ times greater than the judgment in *Gleason*—militates heavily in favor of adherence to New Jersey's presumption of simple interest so as to avoid an exponential increase in the final judgment.

[7] Historical New Jersey Cash Management Fund rate information can be found at http://liberty.state.nj.us/treasury/doinvest/rate1.html.

[8] The parties stipulated at trial to a judgment of $6,564,698.00, and the Court entered judgment in that amount [D.E. # 120].  Plaintiff's brief in opposition to the current motion states that $3,239,630.00 represents the withheld quarterly payments, and the remaining $3,325,069.00 represents Soroka's ending capital balance.  Pl. Opp. Br. at 15.  These two figures total $6,564,699.00, one dollar more than the stipulated amount of judgment.  The Court assumes that the residual capital account balance correctly totals $3,325,068.00.  Should this or any other figure be inaccurate, however, the parties are directed to reflect the correct amounts in the stipulated final judgment (*see infra*).

18

**III.      CONCLUSION**

For the foregoing reasons, defendants' motion to amend the judgment to include prejudgment interest is granted.  In an order to be filed herewith, the parties will be directed to file a stipulated form of final judgment consistent with the parameters set forth herein.


/s/  Katharine S. Hayden

Hon. Katharine S. Hayden
United States District Judge


Date:  August 6, 2009